REGAN, Judge.
Plaintiffs, James Anthony Calcagno, Sr., the owner of a Ford Sedan, and James Anthony Calcagno, Jr., the operator thereof, instituted this suit against the defendants, Gilbert L. Sheen, the owner of a Cadillac automobile, United States Fidelity and Guaranty Company, his liability insurer, and Andrew M. Cook, the operator thereof, endeavoring to recover $401.01 and $23,500 respectively, representing property damage incurred to the Ford Sedan and personal injuries sustained by Calcagno, Jr., as the result of an intersectional collision in Broadway and Freret Streets, in the City of New Orleans, between the two vehicles, on October 11th, 1947, at about 1:30 a. m.
Defendants answered and denied that Cook was guilty of any negligence in the premises and averred that the accident was caused solely by the negligence of Calcagno, Jr., and, in the alternative, pleaded contributory negligence. Defendant, Sheen, then reconvened claiming the sum of $909.27 representing property damage incurred to his Cadillac automobile as a result of the collision.
From a judgment dismissing the main demand and awarding judgment against Cal-cagno', Jr., in favor of defendant, Sheen, in the amount of $909.27, the plaintiffs have prosecuted this appeal.
We have made a very careful and diligent analysis of the voluminous record and we conclude therefrom that this case poses for our consideration only a question of fact which the trial judge, in his written reasons for judgment has so fully answered that we adopt them as our own.
“James A. Calcagno, Sr., as owner of the Ford automobile that he loaned to his son, and his son James A. Calcagno, Jr., the driver of the automobile, bring this suit as plaintiffs against Gilbert L. Sheen and Andrew M. Cook, the owner and driver respectively of a Cadillac automobile, and against the United States Fidelity and Guaranty Company as insurer of Gilbert L. Sheen, for damages which arose out of an inter-sectional automobile accident which took place at the corner of Broadway and Freret Streets of this city, on the eleventh day of October, 1947, at or about 1:30 a. m.
“Calcagno, Sr., sues for the damages to his Ford automobile, and Calcagno, Jr., asks damages for physical injuries allegedly received as a result of the accident.
“Gilbert L. Sheen, assuming the position of plaintiff in reconvention, asks damages against Calcagno, Jr., for the damage to his Cadillac automobile which he alleges were a result of the accident.
“Plaintiffs allege that the Ford automobile being driven by Calcagno, Jr., was proceeding along Broadway in the direction from South Claiborne Ave., towards St. Charles Avenue, and that when it reached the intersection of *21 Broadway with Freret Street Calcagno was about to make a left turn; that he reached a point somewhere near the middle of the intersection when he was struck by the Cadillac sedan automobile being driven by Andrew M. Cook; that the blow that was received by the Ford caused it to be thrown into the front steps of the premises 1002 Freret Street. (The proof in the case shows the actual location as 1002 Broadway.) a distance of approximately forty feet from the point of the collision.
“Plaintiff alleges further that the Cadillac automobile was being driven on Freret Street going uptown or in the direction from Canal’ Street towards Carrollton Avenue, at a speed of about forty-five miles an hour.
“Defendant, on the other hand, alleges by way of his answer that he was not driving on Freret Street in an uptown direction as stated by plaintiff, but was proceeding on Broadway in the direction from St Charles Avenue towards South Claiborne Avenue, and that the plaintiff was not proceeding on Broadway as he alleges, but was proceeding up Freret Street in the direction from Canal Street towards Car-rollton Avenue. In other words, the defendant avers that the plaintiff was on the street that he, plaintiff, says the defendant was on, and not on Broadway as stated in the petition.
“The plaintiff, in company with Rita Pecoraro, who since has become Mrs. James A. Calcagno, Jr., Val Lovisa and Miss Myrtle Ransonet, had visited a night club known as the Trocadero, situated at Louisiana Avenue and Car-ondelet Streets in the City of New Orleans, prior to the accident. Before going to the Trocadero Club, plaintiff and Val Lovisa had purchased a fifth of a gallon of bourbon whiskey. They arrived at the Trocadero at about eleven o’clock p. m. and remained there, as estimated by himself and other witnesses, until a time estimated to be between 12:45 and 1:15 a. m.
“While at the Trocadero, plaintiff’s party met several of their friends, by previous arrangement. The testimony shows that the bottle of whiskey was placed on the table and that plaintiff and his party of four consumed most of the contents of the bottle. There was, according to the testimony of plaintiff and his witnesses, some whiskey left in the bottle when the party left the Troc-adero. Plaintiff states that he had only three or four highballs during the period of time spent at the club.
“Plaintiff testifies that upon leaving the Trocadero Club, he drove back Louisiana Avenue from the river towards South Claiborne Avenue, and turned up South Claiborne Avenue anticipating taking Miss Rita Pecoraro to her home on Monroe Street, but some time prior to reaching the intersection of Broadway and South Claiborne Miss Ransonet asked to be taken home first. According to the testimony he then turned left into Broadway from South Claiborne and proceeded to Freret Street where he intended to turn down Freret Street to bring Miss Ransonet home in the 1900 block on Laurel Street.
"Mr. Cook, the driver of the Cad-illap sedan, testified that he had been visiting the home of a young lady whom he later married, in the 5500 block of St. Charles Avenue, at the corner of Joseph and St. Charles Avenue in this city. He testified that he had had dinner with his then finance and her family, and that when he left the residence he drove up St. Charles Avenue to Broadway, turned right at Broadway and proceeded back Broadway in the direction towards South Claiborne Avenue, intending to go to his home which is located in the Met-airie Section in Jefferson Parish. He testified that he had had nothing intoxicating whatsoever to drink on the evening in question.
“Cook testifies that prior to reaching the intersection of Broadway and *22 Freret, he blinked his lights, blew His horn and reduced his speed from between twenty and thirty miles per hour, by about five miles per hour; that when he reached the intersection of Freret Street the Ford automobile driven by the plaintiff came out of Freret Street at a fast rate of speed; that being confronted with this emergency he applied his brakes but could not avoid running into the Ford automobile being driven by plaintiff.
“Defendant testifies further that his car stopped at the point of impact, but the Ford automobile continued on its course, jumping the neutral ground on Broadway, crossing the uptown roadway, jumping the uptown sidewalk curb and running into the steps of the residence 1002 Broadway, demolishing the railing of the steps.
“This court cannot accept the testimony of the plaintiff and his witness, Val Lovisa, to the effect that the plaintiff was traveling on Broadway. The testimony of Miss Rita Pecoraro, now the wife of the plaintiff was vague, and not helpful to the court.
“Defendant charged in his answer that the plaintiff was intoxicated. The testimony adduced does not establish, in the opinion of the court, that. the plaintiff was drunk; but from the plaintiff’s own testimony he had been drinking, and this court is constrained to believe that he had imbibed more freely than his testimony would indicate, or that he was certainly affected by that of which he had partaken.
“The court finds that plaintiff’s version of the accident is untenable. It is negatived by the physical picture after the cars came to rest, by the testimony of the defendant, and by the testimony of an apparently disinterested witness, one Hardy B. Woodbridge, Jr., whose depositions are in the record. The testimony of Mr. Woodbridge shows that he was walking on Broadway at the very time of the collision, in the direction from St. Charles Avenue towards Freret Street; that he was one hundred feet or so from the intersection when he observed the lights of an automobile behind him; that he turned to see whether or not it was a bus which he intended to board, and observed that it was a Cadillac automobile; that he continued walking, facing in the direction of Freret Street and that he saw the Ford automobile come out of Freret Street from downtown towards uptown at the intersection of Broadway; and that he saw the Cadillac and the Ford collide.
“This court believes this is exactly how the accident happened. Mr. Woodbridge testifies further that the Ford automobile did not come to a stop' until it reached the uptown side of Broadway, to the right of Freret Street, in the front yard of a home on the corner of Freret and Broadway on the uptown side and the side away from the river, and that the Ford had run into the front porch of the right hand side of the house, and that the Cadillac stopped in the middle of the intersection.
“It is the opinion of this court,, from the testimony adduced, that the plaintiff in this case was not aware of' what street he was traveling on. He certainly was not paying attention to what he was doing, as he testifies that he is familiar with this section of the-city. From the evidence adduced he came out of Freret Street into Broadway, a boulevard and a right of way street, without stopping.
“There is a signal light at this intersection, which at the time of the accident was so regulated that it was showing an amber light. . Be this as it may, before entering a boulevard street, it is. the plaintiff’s duty to stop. The distance plaintiff’s automobile traveled after colliding with the Cadillac was. such as to convince this court-that it did not stop before entering the intersection ; that on the contrary it must have entered the intersection at a fast rate of: speed.
*23 “Since this court finds that plaintiff did not even know what street he was on, it could not find that he was keeping a proper lookout. The driver of defendant’s Cadillac, Mr. Cook, was on a boulevard and a right of way street, and as he approached the amber light as aforesaid, he reduced his speed, sounded his horn and blinked his lights. This court is of the opinion that he had a right to proceed on Broadway at the speed and in the manner he was driving, and that he was not guilty of any negligence or contributory negligence; he had a right to assume that any traffic coming up Freret Street would observe the traffic ordinances and stop for a boulevard or right of way street.
“Accordingly the plaintiff owner of the Ford automobile, James A. Calcag-no, Sr., cannot recover for damages to his Ford automobile.
“There is no doubt that James Cal-cagno, Jr., was operating the Ford automobile in a negligent manner and that he is responsible in damages to the plaintiff in reconvention, the owner of the Cadillac automobile, Gilbert L. Sheen.
“The damages to the Cadillac automobile amounted to the sum of $909.-27.”
On appeal plaintiffs have insisted that Cook had the last clear chance of avoiding the accident. We find no merit in this contention. It is our opinion that the record fails to disclose that Cook was negligent or that he possessed the last clear chance of avoiding the accident. Plaintiffs carried the burden of proving fault on Cook’s part by a preponderance of the evidence. Not only have they failed in this respect, but it is perfectly clear to us after our analysis of the record that the accident was caused solely by the negligence of Cal-cagno, Jr., however, he was not intoxicated as defendants have asserted in their answer.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.